IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CHRIS KNAPP,

                Plaintiff,

v.                                                  OPINION AND ORDER

KILOLO KIJAKAZI,                             21-cv-702-wmc
Acting Commissioner of Social Security,

                Defendant.

---

Plaintiff Chris Knapp seeks judicial review of a final decision of defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, finding that Knapp was not disabled within the meaning of the Social Security Act. Knapp contends that the administrative law judge (ALJ) who decided his claim of disability failed to account for the severity of his physical and mental impairments in assessing his residual functional capacity ("RFC").[1] Because the ALJ's findings and conclusions were well-explained and supported by the record, the court will affirm the Commissioner's decision.

BACKGROUND

Chris Knapp originally applied for disability benefits and supplemental security income in August 2019, when he was 52 years old. He claimed that he had been disabled since October

---

[1] In addition to these challenges, plaintiff contends that the decision denying benefits is invalid because Andrew Saul, the former Commissioner, was not appointed in accordance with Article II of the Constitution. This argument is based on an arguable extension of the Supreme Court's decision in *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020), but this court has repeatedly rejected *Seila*'s application to Social Security decisions. *See Schwechel v. Kijakazi*, No. 20-CV-700-WMC, 2022 WL 135022, at *5 (W.D. Wis. Jan. 14, 2022); *Kreibich v. Kijakazi*, No. 20-cv-1045-bbc, 2022 WL 538261, at *6 (W.D. Wis. Feb. 23, 2022) (collecting cases). Plaintiff's argument here is rejected for the same reasons provided in those earlier decisions.

2016, due to multiple spinal fractures, a brain injury, and ongoing pain incurred after hitting a deer while riding his motorcycle. (AR 43.)[2] Knapp also alleged mental health impairments, including anxiety and depression. (AR 233–43.) He later amended his alleged onset date to November 2017.

After the local disability agency denied his claim initially and on reconsideration, Knapp requested an administrative hearing, which was held via videoconference on March 3, 2021, before ALJ Guila Parker. (AR 39–68.) Knapp testified at the hearing that: he had pain in his back, neck and hands every day; neuropathy in his hands made it difficult to it hold and handle things like zippers, buttons and shoelaces; and neuropathy in his feet made it difficult to stand and walk. (AR 55, 57–58.) Knapp also testified that he sometimes used a cane for walking and standing (AR 56), and he did not like to leave the house because of anxiety and panic attacks. (AR 58.)

In a May 2021 decision, the ALJ found Knapp not disabled. (AR 15–31.) Even so, the ALJ found that Knapp had the following, severe impairments: degenerative disc disease of the lumbar and cervical spine; mild anterior compression fractures of the thoracic spine; bilateral carpal tunnel syndrome; diabetes; obesity; depression; anxiety; and a substance abuse disorder. (AR 18.) Still, the ALJ found that Knapp had the "RFC to perform a reduced range of light work, with the following limitations:

- occasionally stoop or twist and frequently kneel, crouch, or crawl;
- frequently, not constantly, handle and finger with the bilateral upper extremities;
- no work at unprotected heights or around dangerous moving machinery;
- understand and remember simple instructions consistent with unskilled work;

---

[2] Record cites in this opinion are to the administrative record located at Dkt. 7.

- maintain concentration, persistence, and pace sufficient to carry out simple tasks for two-hour intervals over an eight-hour day with routine breaks;
- tolerate occasional changes in work setting;
- perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances in a work environment requiring only simple and routine tasks;
- complete a normal workday and work week without interruption from psychologically based symptoms in a work environment requiring only simple, routine tasks;
- occasionally interact with supervisors and co-workers, but should not be required to perform tandem tasks that require coordination with co-workers; and
- work in proximity to the public and have brief interaction with the public.

(AR 20.) Relying on the testimony of a vocational expert that Knapp could perform jobs with this RFC that existed in significant numbers in the national economy, including marker, router and office helper, the ALJ concluded he was not disabled. (AR 30–31.)

ANALYSIS

The question before this court on review is whether the ALJ's decision is supported by "sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). This standard requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The ALJ must also identify the relevant evidence and build a "logical bridge" between that evidence and the ultimate factual determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

Here, plaintiff contends the ALJ made four, separate findings lacking sufficient evidence: (1) he could frequently handle and finger; (2) he did not need a cane for standing and walking; (3) he had no severe limitations caused by his diabetes; and (4) he had no additional social limitations. The court addresses each of these findings below.

3

A. Handling and Fingering

The ALJ found that plaintiff could "frequently, not constantly, handle and finger with the bilateral upper extremities." (AR 20.) Plaintiff argues that the ALJ did not explain the basis for finding this manipulative limitation, beyond noting that plaintiff had bilateral carpal tunnel syndrome. He argues that based on plaintiff's medical records showing shoulder pain, stiffness and reduced range of motion, as well as his own testimony that he had difficulty holding things and using zippers, buttons and shoelaces, the ALJ should have limited him to only "occasional" handling and fingering.

However, the ALJ explained adequately why she did not include additional fingering and handling limitations in plaintiff's RFC. First, she acknowledged that plaintiff complained of neuropathy in both of his arms in October 2019, and that an EMG and nerve conduction study in November 2019 showed moderately severe carpal tunnel syndrome in both wrists. (AR 23, citing AR 596, 661.) Second, she acknowledged plaintiff's testimony at the hearing, during which he reported that neuropathy and pain limited his ability to use his hands. (AR 25–26.) But the ALJ went on to explain that there were no medical records showing plaintiff had ever complained to his treating providers about difficulty using his hands or sought treatment for carpal tunnel syndrome; rather, he requested imaging and testing solely for the purpose of documenting his disability. (AR 25, citing AR 532–33, 622.) In addition, the ALJ noted that plaintiff did not mention at his appointment in January 2020, either wrist pain or problems after the EMG and nerve conduction study, nor did he do so at his annual physical exam in October 2020. (AR 23, citing AR 661, 686–87.) Moreover, at plaintiff's consultative examination with Dr. Peter Lamble, M.D., in February 2020, Dr. Lamble noted that plaintiff's wrist exam was unremarkable, with a normal range of motion in his elbows and wrists, no

4

tenderness on palpitation, and negative Tinel's and Phalen's tests. (AR 25, 27, citing 676–77.) Finally, plaintiff did not identify his hands or wrists as problematic in his own function reports, and plaintiff stated that he was able to care for his own personal hygiene, prepare easy meals, drive, shop, play video games, and work on cars and motorcycles in his shop, all of which suggested to the ALJ the ability to bend, twist and use his hands frequently. (AR 26, citing 289–90, 321, 831.)

Based on all of this evidence, the ALJ concluded that plaintiff had bilateral carpal tunnel syndrome, and some handling and fingering limitations, but that his impairments did not require additional limitations in his RFC. Because this conclusion is supported by substantial evidence in the record and the ALJ sufficiently explained her decision, this topic does not provide a basis for remanding this case.

**B. Use of a Cane**

Next, plaintiff argues that the ALJ erred by finding that plaintiff did not require a cane for standing and walking. Specifically, plaintiff argues that the ALJ improperly dismissed his hearing testimony regarding use of a cane, and erroneously relied on medical records having no bearing on his need for a cane. Plaintiff also argues that the ALJ failed to credit Dr. Lamble's opinion as a consultative physician regarding the limitations arising from plaintiff's use of a cane, including that he could not stand upright unless leaning against something, due to his poor balance.

Plaintiff's arguments are not persuasive, as the ALJ cited ample evidence undermining plaintiff's assertion that he required an assistive device for standing and walking. First, the ALJ discussed plaintiff's own reports about using a cane, which were inconsistent at best. In his function report, plaintiff did not indicate (by checking the appropriate box) that he used a cane

or any other assistive device. (AR 25, citing AR 289–96). At the administrative hearing, when the ALJ asked whether plaintiff used an assistive device, plaintiff responded, "No, not all the time, but if -- I do have a cane that I use once in a while, you know, to alleviate one side." (AR 25, citing 56.) When the ALJ inquired further, plaintiff responded that he actually used the cane "quite a bit," and "mostly [for] standing and if -- if I walk a lot." (AR 56.)

Second, the ALJ explained why she found Dr. Lamble's opinion about plaintiff's balance and ability to walk and stand unpersuasive. (AR 27.) In particular, the ALJ noted that no medical records mentioned that plaintiff attended his appointments with a cane, or even discussed plaintiff using a cane or any other assistive device at all to stand or walk; to the contrary, one examiner noted specifically that plaintiff was able to stand and walk without an assistive device. (AR 27, citing 541, 561–62, 570–71, 630.) Nor did any medical examinations occurring after the alleged onset date mention plaintiff having an abnormal gait or balance problems. In fact, the *only* exception was mention of plaintiff's appearance with a cane at Dr. Lamble's consultative examination. (AR 25.) For all these reasons, the ALJ was entitled to reject Dr. Lamble's opinion as inconsistent with other, objective evidence in the record.

Third, the ALJ was entitled to find the opinions of state agency physicians, Drs. Fowler and Chan, both of whom reviewed plaintiff's medical records and did not opine that plaintiff needed a cane to stand, walk or balance, more persuasive than Dr. Lamble's examination and opinion. (AR 81–82, 118–20.) Specifically, the ALJ noted that Drs. Fowler's and Chan's opinions were consistent with multiple examinations in which no problems with balance or gait were noted and during which findings were made that supported plaintiff's ability to perform light work. (AR 28.)

In sum, the ALJ's analysis of plaintiff's need for a cane was supported by substantial evidence and also provides an insufficient basis to remand this case.

## C.  Diabetes and Neuropathy

Plaintiff's third argument is that the ALJ failed to account for limitations caused by his diabetes -- in particular, diabetic neuropathy in his feet that would limit his ability to stand and walk.  However, as the Commissioner points out, there is *no* evidence in the record that plaintiff had been diagnosed with diabetic neuropathy or that he sought treatment for diabetic neuropathy in his feet.  To support his argument, plaintiff relies solely on a single, monofilament test of his feet performed in March 2020, which showed that he had a dulled sensation in his feet (AR 687), and he argues that the ALJ erred by failing to discuss the results of that test.

However, the physician conducting that test did *not* diagnose plaintiff with neuropathy; instead, the physician's note state that plaintiff had "no complication" from his diabetes and should continue his diabetic medications as prescribed.  (AR 688.)  Thus, this test alone does not establish that the ALJ failed to consider significant evidence of an additional, severe impairment, nor that the ALJ inadequately incorporated limitations caused by plaintiff's diabetes into his RFC.  Finally, the ALJ adequately explained why a limitation to light work was supported by objective and opinion evidence and was sufficient to account for plaintiff's impairments.  (AR 24, 25, 28.)  Accordingly, plaintiff has failed to show that the case should be remanded for further consideration of his diabetes.

**D. Interaction with Others**

Finally, plaintiff argues that the ALJ erred in concluding that he could (1) occasionally interact with supervisors and coworkers, and (2) briefly interact with the public. Rather, plaintiff argues that he should have been limited to brief and superficial interactions with respect to all supervisors, coworkers and the public. However, the ALJ's social limitations were supported by sufficient evidence.

As an initial matter, the ALJ discussed in detail *all* of the evidence showing plaintiff's social impairments, including his and his girlfriend's statements that he did: not like being around people, had difficulty getting along with people and authority figures, had a limited social life, did not do well in groups, was easily upset, had been a physical fight with his son, and "snaps at people." (AR 19.) The ALJ also noted medical records reporting that plaintiff was angry, irritated and belligerent at times. (AR 21–22, 24.) Nonetheless, the ALJ provided an ample explanation for finding that plaintiff could tolerate occasional interactions with supervisors and coworkers, as well as brief interactions with the public. Specifically, the record showed that plaintiff's social interactions had improved with treatment and sleep, and plaintiff was able to converse appropriately with others, act cooperatively, smile when appropriate, and interact with his family on numerous occasions. (AR 23, 24, citing AR 630, 653, 830.) Although a different fact-finder could have reasonably imposed additional social limitations, this court may not on review "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). Because the ALJ's conclusions here were supported by substantial evidence, plaintiff has shown no basis for this court to remand for further proceedings.

ORDER

IT IS ORDERED that the decision of defendant Kilolo Kijakazi, Acting Commissioner of Social Security, is AFFIRMED, and plaintiff Chris Knapp's appeal is DISMISSED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 19th day of December, 2022.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge